## FESSENDEN *v.* MORRISON *&amp; a.*

If one having the right to maintain a dam to a certain height, raise it to a higher level, and thereby raise the water to break the bank and overflow the land of a riparian proprietor, he cannot enter upon the land so overflowed and erect an embankment upon the outer margin of it, for the purpose of preventing the escape of the water in that direction.

CASE. The plaintiff alleged that he was possessed of a certain dam at the outlet of Cobbett's Pond, in Windham, and of the right and privilege of keeping up the same, and retaining and holding back the water in said pond, for the use and supply of his mills below, and that the defendants had dug certain ditches across and through the bank of the pond, and directed the water from the pond, and caused it to run to waste; and had also removed certain spilings, rocks, timber, &amp;c. from the bank of said pond, whereby the water run to waste.

The plea was the general issue.

It appeared in evidence that prior to 1833 the plaintiff had the right to keep the dam up at the outlet of the pond to the height that it then was, and the right to raise, keep up and detain the water in the pond, and draw it off for the use of his mills below, as high as the dam at that time would raise it. It also appeared that the defendants owned a farm, situated on the westerly side of said pond, by title acquired prior to 1833, and bounded by the pond. It further appeared that the plaintiff repaired the dam in 1833, and the defendants' evidence tended to show that it was then raised one foot and a half higher than the plaintiff had the right to raise it, while the plaintiff's evidence tended to show that it was not.

About the year 1843, a small portion of the bank of the pond, on the westerly shore of the same, was either broken away by the action of the water or dug away by some one, and the water was discharged into a ditch, which had been

previously dug by the defendants upon their land. On the easterly side of this breach in the bank, in the edge of the pond, the plaintiff put spilings, to prevent the water from running through the breach. These spilings were several times removed, either by the water or by some individual. In 1846, prior to the commencement of this suit, the plaintiff again put in spilings and gravel in the same place, and secured them by large stones, having drawn them across the pond upon the ice. By these spilings or embankment the water was kept up to the height of the dam, and the defendants removed them, alleging their right so to do.

The defendants also introduced evidence tending to show that the westerly bank of the pond, by which their farm was bounded, had since 1833, been washed away in several places to the width of a rod or more, and in the place where the breach was, among others.

The court, among other things, instructed the jury that if they believed from the evidence that the plaintiff, in 1833, raised the dam at the outlet higher than it had formerly been, and thereby caused the water to rise in said pond higher than he had been accustomed to raise it, the defendants had a right to cut down or remove said spilings or embankment to such an extent that the water in said pond should be drawn off, and reduced as low as the level to which the water of the pond would be held and retained by said dam, at the height to which it was in 1833, before it was repaired by the plaintiff; and if the defendants had not removed the embankment so as to reduce the water lower than that level, they were not liable, and the verdict should be in their favor. But if they believed the defendants cut down or removed said spilings or embankment so as to reduce the water in the pond below that level, then the defendants would be liable, and their verdict should be for the plaintiff.

To these instructions to the jury the defendants excepted.

The defendants' counsel also moved the court to instruct the jury that if they found that the plaintiff had raised his dam at the outlet of the pond, in 1833, higher than he had a right to raise it, and had thereby caused the water of the pond to be held back and raised higher than it was lawful for him to hold back and raise the same, and that in consequence thereof a strip or portion of the defendants' farm, adjoining the pond on the westerly shore thereof, had been encroached upon, washed away and overflowed, then and in that case the plaintiff would have no right to enter upon the said strip or portion of the defendants' farm so encroached upon and overflowed, and erect thereupon, at the exterior or westerly line or margin thereof, any dam, mound or embankment whatsoever, and that if he did so, the defendants might lawfully remove the same. But the court declined so to charge the jury, to which the defendants excepted.

The jury returned a verdict for the plaintiff, and the defendants moved to set the same aside, and for a new trial for supposed error in the foregoing decisions of the court.

*Christie* and *Porter*, for the defendants.

1. Cobbett's pond is not a navigable river or other navigable body of still fresh water, in which the public have any right or interest whatsoever. (The case does not state it to be such, and the fact is not to be assumed without evidence.) Angel on W. C. 199; Ib. 214.

2. The pond being in the nature of a river not navigable and the defendants farm being bounded by it, their land goes to the thread or centre of it. 4 Burr. 2164; 12 Mass. Rep. 311; 14 Mass. Rep. 152; 7 Mass. 496.

3. If the pond is to be treated as a navigable river, and in some sort as public property, the plaintiff does not thereby acquire any right to make any erection on the pond shore, upon or against the defendants' land, or in any way to in-

termeddle with the shore or the natural and ordinary action of the water upon it. *Sir Henry Constable's Case*, 5 Co. 107; Angell on W. C. 204, 206; *Ball* v. *Herbert*, 3 Term 253.

4. The pond being public property, and the defendants' land being bounded upon it, their land extends to the edge of the water, wherever that may be. *State* v. *Gilmanton*, 9 N. H. Rep. 461; Angell on W. C. 222, 223.

5. The pond being public property, the plaintiff has no right to have a dam at the outlet, and thereby to raise the waters of the pond above their natural and ordinary height, unless by public grant. He pretends to no such grant. His dam, at the outlet, is, therefore, a public nuisance, and may be abated. 4 Mass. Rep. 252; 2 Barn. & Ald. 662; Angell on W. C. 83; Ib. 213; 10 Mass. Rep. 70.

6. The pond being public property, the plaintiff had no right to erect any dam or embankment on the shore, at any place, to intercept or disturb the natural and ordinary state or action of the water, without a public grant. (The doctrine assumed under this head is sustained by the cases referred to under the next preceding.)

7. The dam or embankment erected by the plaintiff on the defendants' shore, was a private, if not a public nuisance, and might lawfully be abated by the defendants. 3 Black. Com. 5; Angell on W. C. 136; 9 Mass. Rep. 316; *Penruddock's Case*, 5 Co; *Bater's Case*, 9 Co. 53; Salk. 458.

8. It was unlawful for the plaintiff to raise any dam, embankment or obstruction, of any kind, to prevent or hinder the defendants from approaching the waters of the pond from their land or shore, at any and all points thereof, to use the water for any purpose necessary or convenient for the common and ordinary business of agriculture, or so as to prevent the water of the pond from flowing into and upon the defendants' land, as it was naturally and ordinarily accustomed to do.

9. The pond, by the natural action of the water breaking through the defendants' bank, and running in a new stream through their land, and creating for itself a new outlet, the new stream or outlet would be the defendant's property, and the plaintiff would have no right to intermeddle with it, to prevent its entering, passing over or out of the defendants' land. Angell on W. C. 222, 223; Harg. Tracts *de jure maris ;* 2 Black. Com. 262.

10. " The spilings, rocks, timber," &c., which the plaintiff complains were removed by the defendants, were wrongfully placed by him upon the land, without their permission and against their will, and, therefore, the defendants removed the same, as they lawfully might.

*Stickney*, for the plaintiffs.

The question of the plaintiff's right to enter upon the defendants' land did not arise in the case. They owned only to the margin. *State* v. *Gilmanton,* 9 N. H. Rep. 461; Angell on W. C. 10 ; 1 Shepley 198.

If the bank should be broken away, the plaintiff may enter to repair. Angell on W. C. 136, 137.

The plaintiff might enter to repair as incident to his right to maintain his dam. *Cocheco Man. Co.* v. *Whittier.* 10 N. H. Rep. 313; Angell on W. C. 43, 44; 21 Pick. 29; 3 N. H. Rep. 190 ; 8 N. H. Rep. 465; Cro. Jac. 121; 9 N. H. Rep. 285; 13 N. H. Rep. 361; 2 Met. 467.

It makes no difference where the earth is washed out, as to the plaintiff's right to repair the dam.

The motion to instruct went too far.

Woods, J. It may well be conceded for the purposes of this case, that a right to raise water to a certain height by means of a dam, involves the right to do such other acts, at other parts of the stream, as are necessary to render the right of maintaining the dam of any value, and that if by the natural and ordinary work of the elements a channel

becomes excavated, or begins to be excavated, upon the land of the riparian proprietor, that must divert the water from the uses for which it has been detained in the pond or reservoir, the party raising the dam and entitled to the use of the water, may stop up the new channel. And this concession may be made irrespective of the origin of the right to maintain the dam, and of the question whether the boundary of the riparian owner is to be found upon the margin of the reservoir or at the thread of the stream.

But the plaintiff does not so limit his claim. Upon the hypothesis that he has, by his own illegal act, in raising his dam a foot and a half beyond the level to which he was entitled, broken away the banks of the defendant, and thrown the water upon his farm, he claims to make a further appropriation of the land so flooded, by erecting upon or around it a breakwater or embankment, to prevent the escape of the water so unlawfully raised by himself. This is a clear enlargement of his dominion, and an encroachment upon the soil of the defendants. If the act has become necessary for the preservation of his water privilege, it has been rendered so by his own wrong ; and it will be in season to justify it, upon the ground of such necessity, after he shall have cut down his dam to the proper level.

The evidence was such as to justify the defendants' motion. It tended to show that the erection, in 1833, was a foot and a half higher than the plaintiff's proper level, that since that time the defendants' bank had been worn away a rod and more at the place where the breach occurred and the embankment was made. It was proper, in that state of the evidence, to leave it to the jury to inquire whether the wearing of the bank was caused by such erection. If the affirmative were true, the pond had of course become enlarged by the illegal act of the plaintiff, and he had, of course, no right to go to the edge of it so extended over the defendants' soil, and to erect there the embankment, to pre-

vent the escape of the water in that direction, and the jury should have been so instructed, according to the defendants' motion.    The verdict, for that cause, must be set aside and

*A new trial granted.*